## NOTTAGE v. SAWMILL PHŒNIX.

(Circuit Court, D. Washington, E. D. December 21, 1904.)

1. MASTER AND SERVANT—INJURY OF SERVANT—ASSUMED RISK.

An employé in a sawmill, who, for extra compensation, agreed to operate a saw on Sunday, which was not required by his general employment, and with knowledge that the saw was not guarded for the protection of employés as required by the statutes of the state, and that it was a dangerous implement, assumed the risk, and cannot recover for an injury, although it would not have occurred if the owner of the mill had complied with the law.

2. SAME—USE OF UNGUARDED MACHINERY—WASHINGTON STATUTE.

Laws Wash. 1903, p. 40, c. 37, for the protection of employés in factories and mills, requires any person or corporation operating a factory or mill where machinery is used to provide and maintain safeguards for such machinery, and prohibits the use of any machine not so guarded. It further makes its violation a criminal offense, punishable by fine or imprisonment. *Held*, that such statute is penal, enacted in the exercise of the police power of the state, and that it cannot be construed by the courts as changing the common-law rule as to assumption of risk by an employé who knowingly uses unguarded and dangerous machinery, nor as in any way affecting the rights of the parties in a civil action to recover for an injury resulting from the use of unguarded machinery.

Action at law to recover damages for a personal injury suffered by the operator of an unguarded ripsaw. Tried by the court, a jury having been waived. Findings and judgment for the defendant.

Robertson, Miller & Rosenhaupt, for plaintiff.
Danson & Huneke, for defendant.

HANFORD, District Judge. This is an action to recover damages on account of an injury to the plaintiff's hand, caused by contact with a circular ripsaw, which the plaintiff was operating in the defendant's mill. The accident happened on a Sunday, the plaintiff having accepted an offer of employment on that day for extra pay.

¶ 1. Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.

The defendant failed to comply with the requirements of a statute of this state, which makes it an imperative duty of sawmill owners to provide for the safety of their employés by having substantial safety guards attached to all circular saws of the kind which caused the injury to this plaintiff, and the court finds as a fact, proven by the evidence, that if the protection which the statute requires had been provided the accident by which the plaintiff was injured would not have happened. The defendant is convicted by the evidence of culpable negligence, which the statute makes criminal, and that negligence was the proximate cause of the severe and permanent injury for which this plaintiff claims damages.

So far the court has proceeded without difficulty in finding facts established by the evidence and reaching conclusions favorable to the plaintiff's side of the case; but, on the other hand, it is an undisputed fact in the case that the plaintiff voluntarily accepted an offer of employment as operator of this particular saw, after he had been working continuously at other employment in the same mill for a period of at least six weeks, his station being less than 10 feet distant from this ripsaw, so that he had abundant opportunity to have become familiar with it, and necessarily knew that it was unguarded and lacking in the means of safety which the statute prescribes. He was not obliged to work on Sunday, under the terms of his general contract of employment, but accepted an offered opportunity to work as operator of the ripsaw on a Sunday for extra compensation, knowing that the saw was unguarded and a dangerous implement.

These facts bring the case clearly within the rule of law which exempts an employer from liability for accidental injuries to employés on the ground that they are held to a degree of responsibility for their voluntary acts, and are deemed to have assumed the risk of accidental injuries happening from exposure to known or obvious dangers.

It is absolutely necessary in the conduct of human affairs for people to have liberty to engage in dangerous employments, and the law takes into consideration the circumstances surrounding each contract of employment, and fixes the relative responsibilities of the parties with reference to what may be fairly assumed to have been their own understanding and agreement. The law does not place upon employés an obligation to investigate conditions and assume the risk of accidents which may happen from dangers which might be revealed by a reasonably thorough inspection of places and appliances, but merely takes for granted that by voluntarily entering into an employment, or continuing therein, they do thereby assent to the exposure of themselves to all such dangers as they know to exist, and such as are necessarily obvious to them in view of their capacity, knowledge, and experience, each case being judged by its peculiar facts.

The principles of the common law applied to the facts in this case afford no ground for an award of damages to the plaintiff; but in his behalf it is contended that he has a right of action, and is entitled to an award of damages, by virtue of a statute of this state

providing for protection of employés in factories and mills, enacted March 6, 1903. See Laws Wash. 1903, p. 40, c. 37.

This statute provides in terms—

"That any person, corporation or association, operating a factory, mill or workshop where machinery is used, shall provide and maintain in use * * * proper safeguards for all vats, pans, trimmers, cutoff, gang edgers and all other saws that can be guarded advantageously. * * * If a machine, or any part thereof, is in a dangerous condition, or is not properly guarded, the use thereof is prohibited and a notice to that effect shall be attached thereto. * * *"

Section 4:

"Any person, corporation or association who violates or omits to comply with any of the foregoing requirements or provisions of this act, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than twenty-five nor more than one hundred dollars or by imprisonment for not less than fifteen days nor more than ninety days."

This is a penal statute, enacted by the Legislature in the exercise of the police power of the state, and it contains no provision purporting to affect in any way the rules of law applicable to civil actions. It gives no hint of an intention to confer upon injured employés any new right enforceable in an action to recover damages, nor does it express a legislative intent to change the common law by abolishing defenses recognized by the common law, nor does it prescribe an arbitrary rule of evidence, like the provision contained in the act of Congress making the use of automatic couplings on railroad trains compulsory, which prescribes, in effect, that trainmen shall not be deemed to have assumed the risk of injuries from their employment on trains not provided with automatic couplers. See U. S. Comp. St. 1901, vol. 3, p. 3176.

In support of the plaintiff's contention the following cases have been cited, in which it is argued that the statute must be construed to further the object intended of affording protection to employés in mills and factories, and that the law would be defeated of its purpose by exempting an employer guilty of its violation from liability to an injured employé for damages in a civil action: Green v. Amer. Car & Foundry Co. (Ind. Sup.) 71 N. E. 268; Davis Coal Co. v. Polland, 158 Ind. 607, 62 N. E. 492, 92 Am. St. Rep. 319; Monteith v. Kokomo, etc., Co., 159 Ind. 149, 64 N. E. 610, 58 L. R. A. 944; Baltimore & O. S. W. R. Co. v. Cavanaugh (Ind. App.) 71 N. E. 239; Sipes v. Michigan Starch Co. (Mich.) 100 N. W. 447; Marino v. Lehmaier (N. Y.) 66 N. E. 572, 61 L. R. A. 813; Buehner v. Creamery Package Mfg. Co. (Iowa) 100 N. W. 345; Western Anthracite Coal & Coke Co. v. Beaver (Ill.) 61 N. E. 336; Narramore v. Cleveland C. C. & St. L. Ry. Co., 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68; Green v. Western American Company, 30 Wash. 87, 70 Pac. 310.

With all due respect to the learned judges who have expressed such views on the subject, I feel constrained to reject these arguments as being unsound. The courts have no authority to extend or amplify the provisions of statutes so as to make them comprehend additional rights and remedies which the Legislature omitted to provide. A statute which is plain and free from ambiguities is

not subject to judicial construction, but must be interpreted by the courts and enforced according to the legislative intention expressed by its words. It is not true that the purpose of the statute will be defeated by a decision of a controversy between individuals involved in a civil action in accordance with the long-established rules of the common law. It may be fairly inferred that the Legislature did not intend to encourage this class of litigation, which is already stimulated to abnormal proportions by the solicitations of employment by specialists, but preferred, as a means of protecting employés in factories from the consequences of recklessness in the use of dangerous agencies, to make the unnecessary use of unguarded machinery criminal and punishable. The real intention of the Legislature is made apparent by the fact that the law does not discriminate between employers and employés. It is not a law subjecting only the owner or manager of a mill or factory or an employer of labor to the penalties prescribed, but section 4 applies generally to every "person, corporation or association who violates or omits to comply" with the requirements of the act. Section 1 provides that, if a machine is not properly guarded as required, the use thereof is prohibited; therefore an employé in a mill who operates an unguarded saw commits a prohibited act, and is a violator of the statute, and subjects himself to punishment as provided in section 4.

Another of the arguments found in the dictum of cases relied upon by the plaintiff is a rather far-fetched theory that the statute has by necessary implication abolished the common-law principle of assumption of risk by voluntary employés, because that principle is based upon an implied contract, and, since the statute makes the use of unguarded machinery criminal, any such implied contract would be an inconsistency in the law itself, in so far as the law would create a contract to do an act which the law prohibits.

In this there is a misunderstanding of the legal implication in such cases. A contract of employment is not a creation of the law. Nor is the assumption of risk of injury from the employer's wrongful neglect of his duty a burden imposed by the law. It only deals with actual conditions, and it is the actual use of dangerous agencies to which the law attaches the implied agreement on the part of an employé to make no claim against the employer for any injury which may happen, as a consequence of his voluntary exposure to known or obvious dangers. Were a man to stipulate in express terms to operate a dangerously defective machine for a definite period of time, the law would not hold him liable as a violator of a valid contract for refusing to expose himself to such danger, when no peculiar circumstances excused the employer's failure to correct the defect. Such a stipulation in an executory contract would be illegal and void because obnoxious to the natural law of self-preservation and contrary to public policy. There is no substantial difference between an agreement which is unlawful because harmful and an agreement to do an act prohibited by a statute. In either case the unlawfulness of the agreement constitutes a bar to its enforcement by judicial proceedings.

If the violation of the statute by the operation of an unguarded saw places the guilty employer in a position in which he cannot be permitted to invoke a well-established rule of law as a defense in a civil action to recover damages for an injury resulting from such violation of the statute, it is so because the law leaves willing wrongdoers to suffer the consequences of their voluntary acts, and the same rule applies with equal force as a bar to the maintenance of an action to recover damages for such an injury resulting from a violation of the statute, in the operation of a dangerous and prohibited machine, by the injured operator.

For the reasons above set forth, it is my opinion that this plaintiff has neither a common-law nor statutory right of action for the injury which he has suffered, and that a judgment must be rendered that he take nothing by this action.