THE HON. WILLIAM L. HOLLOWAY, ⎫
⎬ Associate Justices.
THE HON. SYDNEY SANNER, ⎭

---

MELVILLE ET AL., APPELLANTS, *v.* BUTTE–BALAKLAVA
COPPER CO., RESPONDENT.

(No. 3,217.)

(Submitted January 14, 1913. Decided February 10, 1913.)

[130 Pac. 441.]

*Personal Injuries—Mines and Mining—Wrongful Death—Master and Servant—Right of Action—When Heirs cannot Recover—Statutory Construction—Eight-hour Law—Violation of Statutes—Negligence Per Se.*

Personal Injuries—Master and Servant—Violation of Statute—Negligence
Per Se—Defenses Available to Master.
1. Where a statute, whether penal or not, makes a requirement or
prohibits a thing for the benefit of a person or class of persons, a viola-
tion thereof constitutes negligence *per se,* and one injured by reason
of its nonobservance is entitled to maintain an action against him by
whose disobedience he has suffered harm; defendant in such an action,
however, may defend on the grounds of contributory negligence, as-
sumption of risk, *etc.,* unless such defenses are expressly abrogated by
the statute.
Same—Servant *in Pari Delicto* With Master—Effect on Right of Recovery.
2. Under the rule that an action does not lie at the suit of one who
must base his claim, in whole or in part, on the violation of a criminal
or penal law of the state, a miner who was killed while working in
violation of sections 1739, 1740, Revised Codes, providing that eight
hours shall constitute a day's work in mines under penalty of fine and

imprisonment in the county jail, could not, if he had survived his in-
juries, recover damages in an action brought for that purpose.

Same—Death of Servant—Right of Action—Statutory Construction.

3.  Held, that section 6486, Revised Codes, in providing that when
the death of a person is caused by the "wrongful act or neglect of
another" his heirs or personal representatives may maintain an action
for damages, *etc.*, implies actionable wrong or negligence toward the
decedent and not toward his surviving wife and children; *held,* further,
that it did not create a cause of action in their favor, to which the
defendant could not interpose the defenses of contributory negligence,
assumption of risk, etc., but that their right to recover damages depended
upon whether decedent, had he survived the injuries, could have done so.

*Appeal from District Court, Silver Bow County; Jno. B
McClernan, Judge.*

ACTION by Thomas Melville and others against the Butte-
Balaklava Copper Company. Judgment for defendant; plain-
tiffs appeal. Affirmed.

*Messrs. Maury, Templeman & Davies,* for Appellants, sub-
mitted a brief; *Mr. H. L. Maury* argued the cause orally.

*Messrs. Kremer, Sanders & Kremer,* for Respondent, sub-
mitted a brief; oral argument by *Mr. Louis P. Sanders.*

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

The purpose of this action is to recover damages for the
death of Michael Melville, which is alleged to have been caused
by the wrongful act of the defendant. The plaintiffs are the
widow and minor children of the deceased, and sue as his heirs.

The facts showing how the accident occurred may be briefly
stated as follows: On the evening of December 6, 1909, the de-
ceased was in the employ of the defendant as shift boss and
pumpman. He had gone on shift at about 7 o'clock in the
morning, and had worked continuously from that time until
he was injured. He and four other men constituted the shift.
They were engaged in excavating a third compartment to the
defendant's mining shaft. The work had begun at the 500-foot
level, and had progressed upward to the 200-foot level. The
two compartments already constructed were used, respectively,

for pumping and hoisting purposes. During the work the men stood upon a bulkhead, which extended over the three compartments of the shaft. Owing to the presence of the men there, the cage could not be lowered entirely to the level of the bulkhead. Therefore, in order to remove the debris resulting from the excavation, the men shoveled it into buckets, which were raised, one at a time, to the surface by means of a hook attached to the underside of the deck of the cage. When a bucket was ready to be raised, it was hooked to the cage; then, at a signal by the bell to the engineer at the surface, the cage was raised about five feet, or far enough to clear the bucket from the bulkhead. It was then stopped long enough to enable the men to steady the bucket, so that it would not swing back and forth and bump into the timbers on the way up. Upon the giving of a second signal, it was raised to the surface. When the change shift went on at 3 o'clock in the afternoon, it was found that the air-hose line had been broken by blasts set off by the morning shift. The air-line came down from the surface by way of the pump compartment, and through the other compartment into the excavation. The deceased, having charge of this shift also, undertook to repair the hose. The point at which the break in it had occurred was some fifteen feet above the level of the bulkhead. The deceased went up on the cage to this point, and stepped off upon the timbers separating the pump compartment from the hoist compartment. There being ample room for the cage to pass and repass him, he ordered the men below to send the cage up. Upon its return trip another bucket was attached to it, and the signal given to raise it. As usual, it was stopped for a moment to steady the bucket. By that time the deceased had completed the repairs, and, desiring for some reason to go to the surface, without giving notice to anyone of his intention to do so, he attempted to step upon the cage as it passed the position where he was standing. He missed his footing, was caught between the cage and the timbers, and so badly injured that he died within a few days thereafter.

The wrongful act for which recovery is sought is alleged in the complaint substantially as follows: That the deceased was working underground in defendant's mine in the capacity of shift boss and pumpman; that on December 6, 1909, the defendant wrongfully and intentionally required him to remain at work continuously for a period of more than eight hours; that after he had been engaged for more than eight hours he was "dealt by and in and from said required employment grievous bodily injuries, from which he died thereafter on the twelfth day of December, 1909"; and that there was not, at the time of the injury, any emergency by which life or property was in imminent danger. The answer denies generally the allegations of the complaint. It alleges that the injury of the deceased was due solely to his own negligence in attempting to step upon the cage while it was in motion, and that in so doing he assumed the risk, knowing the danger thereof. The reply joins issue upon these allegations.

It will be observed that the complaint does not allege that the deceased was in such a condition of mental and physical exhaustion, induced by overwork, that he was unable to give proper attention to his surroundings, and that this was the efficient cause of his injury. Though the evidence does not show definitely whether the deceased had continued work after the lapse of eight hours at the instance of defendant's superintendent, or whether he did it voluntarily to accommodate the shift boss who should have relieved him, it is conceded, for the purposes of this case, that he continued at work, with the knowledge of the superintendent, under a standing order made by him that each shift boss should continue at work until he was actually relieved by his successor. At the close of the evidence the court granted a nonsuit and rendered judgment for the defendant. The appeal is from the judgment. Did the court err in granting the nonsuit?

The plaintiffs are entitled to recover, if at all, under section 6486 of the Revised Codes, which declares: "When the death of a person not being a minor is caused by the wrongful act

or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person, who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just."

The theory of counsel for plaintiffs is that the provisions of the Codes which declare that "the husband must support himself and wife out of his property or by his labor," *etc.* (Rev. Codes, sec. 3692), and that "the parent entitled to the custody of a child must give him support and education suitable to his circumstances," *etc.* (*Id.,* sec. 3741), and similar provisions, confer vested rights upon the wife and children to support by the father; and that in every case where they have been deprived of this support by the death of the father, caused by the wrongful act or neglect of another, they have a cause of action against such other person, without regard to whether the father, if death had not ensued, could have maintained an action in his own behalf. It is argued, therefore, that, since the deceased was injured while at work at the request of the defendant, in violation of the provisions of sections 1739 and 1740 of the Revised Codes, though the death was caused wholly by the negligence of the deceased himself, the defendant is to be deemed guilty of his death by wrongful act, within the meaning of the statute.

Sections 3692 and 3741, *supra,* are not pertinent to the present inquiry. They may be dismissed from consideration, with the remark that, so far as they go, they declare the mutual obligations of the husband and wife with reference to the support of the family and the education of the children. They enjoin duties upon the living parents, and do not purport to confer vested rights upon the wife and children, within the meaning of the expression "vested rights" as it is ordinarily used.

Section 1739, *supra,* declares that eight hours shall constitute a day's work upon public works and in certain industries, in-

cluding operations in underground mines. Section 1740 declares a violation of any of its provisions to be a misdemeanor, punishable by fine or imprisonment, or both. In *State* v. *Livingston Concrete etc. Co.*, 34 Mont. 570, 9 Ann. Cas. 204, 87 Pac. 980, these provisions were examined by this court. It was held that the inhibition contained in the latter includes both employer and employee, and renders both subject to the penalty whenever the former causes the employee to work and the latter works for a period longer than eight hours. We shall not undertake to question the contention of counsel that the continuance of work beyond the statutory period is to be deemed a proximate [1]    cause of Michael Melville's death. It is the general rule that, where a statute makes a requirement, or prohibits a thing, for the benefit of a person or class of persons, one injured by reason of a violation of it is entitled to maintain an action against him by whose disobedience he has suffered injury; and this is true whether the statute is penal in its character or not. (Wharton on Negligence, sec. 443; Bishop on Noncontract Law, sec. 132; 1 Thompson's Commentaries on the Law of Negligence, secs. 10, 210; *Queen* v. *Dayton Coal & I. Co.*, 95 Tenn. 458, 49 Am. St. Rep. 935, 30 L. R. A. 83, 32 S. W. 460; *Pauley* v. *Steam Gauge & L. Co.*, 131 N. Y. 90, 15 L. R. A. 194, 29 N. E. 999; *Pelin* v. *New York C. Ry. Co.*, 102 App. Div. 71, 92 N. Y. Supp. 468; *Scally* v. *W. T. Garratt & Co.*, 11 Cal. App. 138, 104 Pac. 325.) A violation of the statute is negligence *per se*, or, properly speaking, legal negligence. (*Osterholm* v. *Boston & Mont. C. & S. Min. Co.*, 40 Mont. 508, 107 Pac. 499; *Neary* v. *Northern Pac. Ry. Co.*, 41 Mont. 480, 110 Pac. 226.) But the rule thus broadly stated does not preclude the defendant from showing that the negligence of the plaintiff was a proximate cause of the injury, or that he assumed the risk, and hence is not entitled to recover. The purpose of such statutes being to protect the employee or the public, they do not abrogate these defenses, unless they expressly so declare. Their effect is to render a failure to comply with their requirements negligence *per se*, or legal negligence, and not to excuse negligence in other persons. (4 Thompson's

Commentaries on the Law of Negligence, secs. 210, 4622; Bishop on Noncontract Law, sec. 140; *Osterholm* v. *Boston & Montana C. C. & S. Min. Co., supra.*)

If a violation of the statute by the employer is negligence, it is equally so on the part of the employee; and if the disobedience, on the one hand, is a proximate cause of the injury, so the dereliction, on the other hand, must be regarded as a contributing proximate cause; for the disobedience is concurrent, and the injury is the result of the concurrent causes which operated to the same end. In such a case the employee cannot recover, because, [2] in alleging the injury, he must, of necessity, allege his own fault. It is the general rule that an action never lies when the plaintiff must base his claim, in whole or in part, on the violation of a criminal or penal law of the state. (*Lloyd* v. *North Carolina R. R. Co.,* 151 N. C. 536, 66 S. E. 604; *Nottage* v. *Sawmill Phoenix* (C. C.), 133 Fed. 979; *McGrath* v. *Merwin,* 112 Mass. 467, 17 Am. Rep. 119; *Louisville etc. Ry. Co.* v. *Buck,* 116 Ind. 566, 9 Am. St. Rep. 883, 2 L. R. A. 521, 19 N. E. 453; *Little* v. *Southern Ry. Co.,* 120 Ga. 347, 102 Am. St. Rep. 104, 66 L. R. A. 509, 47 S. E. 953; *Voshefskey* v. *Hillside C. & I. Co.,* 21 App. Div. 168, 47 N. Y. Supp. 386; Thompson's Commentaries on the Law of Negligence, secs. 10, 204, 249.) This rule finds expression in section 6192 of the Revised Codes, as follows: "Between those who are equally in the right, or equally in the wrong, the law does not interpose." If, therefore, Michael Melville had survived, he could not have maintained an action, for the obvious reason that the evidence discloses, in the first place, that his injury was due to his own reckless conduct, and, in the second place, if this were not so, for the reason that he would have to rely on the violation of the statute by the defendant and thus show that he was himself *in pari delicto* with the defendant, and hence base his claim upon his own criminal conduct.

Counsel insist, however, that the statute, *supra,* creates a cause of action in favor of the wife and children because of the wrong [3] done to them; and that, since the defendant's violation of the penal statute was a proximate cause of the death of the hus-

band and father, the death was caused by its wrongful act, within the meaning of the statute, without regard to the negligence of which the deceased was himself guilty.  In other words, the defenses of contributory negligence, assumption of risk, *etc.*, which would have been available against the deceased if he had brought the action, are not available to the defendant in this action.  This contention presents the real question in the case, *viz.:* Do the words of the statute "wrongful act or neglect of another" imply actionable wrong or negligence toward the deceased, or toward the surviving wife and children?  It is thus made necessary to examine and construe the statute in the light of its history and the expression of opinion by the courts generally as to the purpose of such enactments.

At the common law one who was injured by the wrongful act of another had his action for the wrong.  If he died before his action was brought, his right of action died with him.  If he had brought his action, but died before judgment, the action abated.  So, also, it was the rule that for the death of one person, caused by the wrongful act of another, there was not any remedy by civil action.  (*Dillon* v. *Great Northern Ry. Co.*, 38 Mont. 485, 100 Pac. 960.)  To avoid this condition the English Parliament enacted what is commonly known as Lord Campbell's Act (9 & 10 Vict. 93).  This statute created a new right of action in favor of the kindred of the deceased for the damage sustained by them through the death of the deceased.  In 1872 the legislature of the territory of Montana enacted a statute containing two sections, the first of which was substantially the first section of Lord Campbell's Act.  The second was a modification of the second section of that Act, in that it limited the amount of recovery and also the time within which the action might be brought.  This Act was as follows:

"Sec. 1.  Whenever the death of a person shall be caused by (a) wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who,

or the corporation or company which would have been liable if death had not ensued, shall be liable for an action for damages, notwithstanding the death of the person injured and although the death shall have been under such circumstances as amount in law to felony.

"Sec. 2. Every such action shall be brought by, and in the name of, the personal representatives of such deceased persons, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages, not exceeding twenty thousand dollars, as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death, to the wife and next kin of such deceased person: Provided, that every such action shall be commenced within three years after the death of such person." (Codified Statutes 1871–72, Chap. 61.)

The statute was thereafter retained in the various compilations and revisions of the laws of the territory and state until the Revision of 1895, from which it was omitted. (Rev. Stats. 1879, 5th Div., secs. 491, 492; Comp. Stats. 1887, 5th Div., secs. 981, 982.) In 1877 the territorial legislature enacted a complete Code of Civil Procedure. Section 14 of that Code is identical with section 6486 of the Revised Codes, *supra*. This provision was doubtless copied from the Code of Civil Procedure of California, as amended by the Act of March 24, 1874. (Cal. Code Civ. Proc., sec. 377.) However this may be, it has ever since been retained as a part of our Code of Civil Procedure. (Rev. Stats. 1879, 1st Div., sec. 14; Comp. Stats. 1887, 1st Div., sec. 14; Code Civ. Proc. 1895, sec. 579; Rev. Codes, sec. 6486.) The purpose had in view by the legislature is apparent. It was to provide the procedure by which the right of action created by the first section might be enforced, and to substitute it in the place of the second section of the older Act. The older Act was not

repealed, but was allowed to stand undisturbed, except so far as the later Act, by implication, modified and became a substitute for the second section of it. The modification wrought by it was to except minors from its operation, to omit the limitation as to the amount of recovery and as to the time within which the action must be brought, and to authorize the heirs, as well as the personal representative, to maintain the action; whereas under the old statute it could be maintained by the personal representative only. It is thus apparent that the cause of action contemplated by the enactment of 1877 was the same as that created by the older Act; for the retention of both provisions in all subsequent compilations and revisions of the laws, up to the adoption of the Codes of 1895, the one in the Code of Civil Procedure and the other among the general laws, required both to be construed together as establishing the law on the subject, and compels the conclusion that the later Act, though its terms are appropriate to confer a right, was not intended to confer a different right from that created by the older. The meaning of the expression "wrongful act or neglect of another" thus became established and clearly limited to those cases only wherein the death is wrongful as against the deceased, and to preclude recovery when death was due to the decedent's own fault. And though the legislature omitted from the Codes of 1895 the general provision creating the right, and retained only the provision as now incorporated in the portion of the Code devoted to the subject of Civil Procedure, it evidently did so, not with the intention of creating a new right of action, but upon the theory that the provision as it now stands would effectually preserve the right as then declared by the omitted provision. This conclusion becomes necessary when we observe that the Code of Civil Procedure of 1895 declared: "The provisions of this Code, so far as they are substantially the same as existing statutes or the common law, must be construed as continuations thereof, and not as new enactments." (Code Civ. Proc. 1895, sec. 3454.) The same provision is found in the present Code. (Rev. Codes, sec. 8062.)

While this court has never expressly determined the question at bar, it has in many cases recognized the rule that recovery can be had only in a case in which the deceased was himself without fault. Some of the decisions of this court were made prior to the adoption of the Codes of 1895. Many more of them have been made since that time. We cite the following: *Johnson* v. *Boston & Mont. Min. Co.*, 16 Mont. 164, 40 Pac. 298; *Thompson* v. *Montana C. Ry. Co.*, 17 Mont. 426, 43 Pac. 496; *Dillon* v. *Great Northern Ry. Co., supra; Meehan* v. *Great Northern Ry. Co.*, 43 Mont. 72, 114 Pac. 781; *Neary* v. *Northern Pac. Ry. Co.*, 41 Mont. 480, 110 Pac. 226; *Bracey* v. *Northwestern Imp. Co.*, 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706; *Poor* v. *Madison R. P. Co.*, 41 Mont. 236, 108 Pac. 645; *O'Brien* v. *Corra-Rock Island M. Co.*, 40 Mont. 212, 105 Pac. 724; *Neary* v. *Northern Pac. Ry. Co.*, 37 Mont. 461, 19 L. R. A., n. s., 446, 97 Pac. 944; *Riley* v. *Northern Pac. Ry. Co.*, 36 Mont. 545, 93 Pac. 948; *Mulville* v. *Pacific M. L. Ins. Co.*, 19 Mont. 95, 47 Pac. 650; *Hunter* v. *Montana Central Ry. Co.*, 22 Mont. 525, 57 Pac. 140.

The interpretation thus given the statute by the legislature, and impliedly by these decisions of this court, has become so firmly established as the rule of decision in this jurisdiction that we do not feel justified in departing from it. To sustain the plaintiff's contention would be to adopt an interpretation which the legislature never intended that the statute should have and thus destroy defenses of which defendant cannot be deprived, except by Act of the legislature. If a change should be wrought, it is the office of that body to make it, and not of this court.

Similar statutes have been enacted in many of the states of the Union, and have been under consideration by the courts. We shall not enter into an examination of the numerous decisions interpreting them. The following more or less directly support our conclusion: *Northern Pacific Ry. Co.* v. *Adams,* 192 U. S. 440, 48 L. Ed. 513, 24 Sup. Ct. Rep. 408; *McDonald* v. *Eagle & Phoenix M. Co.*, 68 Ga. 839; *Casey* v. *Louisville & N. Ry. Co.*, 84 Ky. 79; *Jones* v. *Manufacturing & I. Co.*, 92 Me.

565, 69 Am. St. Rep. 535, 43 Atl. 512; *Louisville Ry. Co.* v. *Raymond's Admr.,* 135 Ky. 738, 27 L. R. A., n. s., 176, 123 S. W. 281; *Hill* v. *Pennsylvania Ry. Co.,* 178 Pa. 223, 56 Am. St. Rep. 754, 35 L. R. A. 196, 35 Atl. 997; *State* v. *Manchester & L. R. R. Co.,* 52 N. H. 528; *Clark's Admr.* v. *Louisville & N. Ry. Co.,* 101 Ky. 34, 36 L. R. A. 123, 39 S. W. 840; *Watts* v. *Murphy,* 9 Cal. App. 564, 99 Pac. 1104; *Schneider* v. *Market St. Ry. Co.,* 134 Cal. 482, 66 Pac. 734.    (See, also, 1 Shearman & Redfield on the Law of Negligence, sec. 65; Thompson's Commentaries on the Law of Negligence, sec. 7071.)

Counsel for the plaintiffs cite and rely with confidence on the case of *Northern Pac. Ry. Co.* v. *Adams,* 116 Fed. 324, 54 C. C. A. 196.    This was an action for wrongful death under the statute of Idaho identical with section 6486, *supra.*    The trial court instructed the jury as follows: "You are not to consider what was the duty of this carrier toward Mr. Adams, who was killed, but the duty which the defendant owed to these plaintiffs; and the duty which they have the right to exact from the defendant in this case is the same duty which the defendant company owed to the public in general."    The circuit court of appeals, by affirming the judgment in favor of plaintiffs, approved the above instruction, thus holding, in effect, that the right to recover was granted by the statute and existed without reference to what right the deceased would have had, had he survived the injuries and had himself brought an action.    In reversing the judgment, the supreme court of the United States (192 U. S. 440, 48 L. Ed. 513, 24 Sup. Ct. Rep. 408) said: "The two terms, therefore, 'wrongful act' and 'neglect,' imply alike the omission of some duty, and that duty must, as stated, be a duty owing to the decedent.    It cannot be that, if the death was caused by a rightful act, or an unintentional act with no omission of duty owing to the decedent, it can be considered wrongful or negligent at the suit of the heirs of the decedent. They claim under him, and they can recover only in case he could have recovered damages had he not been killed, but only injured.    The company is not under two different measures of

obligation—one to the passenger and another to his heirs. If it discharges its full obligation to the passenger, his heirs have no right to compel it to pay damages."

The judgment is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.